Fitch, King & Caffentzis, James A. Caffentzis, New York City, for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Civil Div., Dept. of Justice, and Susan Handler-Menahem, New York City, for defendant.

**NORTH AMERICAN FOREIGN TRADING CORP., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 80–10–01631.**

United States Court of International Trade.

July 17, 1986.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Judge:

In 1979 solid state electric clocks imported from Taiwan with movements measuring less than 1.77 inches in width were classified under items 715.15, 716.15, and 720.34, Tariff Schedules of the United States (TSUS). Item 715.15, TSUS, covered watches and clocks with watch or clock movements measuring less than 1.77 inches in width. Under item 715.15, TSUS, which carried no duty, movements were assessed under item 716.15, TSUS, and cases under item 720.34, TSUS.

In 1982 our appellate court held that since solid state electronic *watches* did not have movements, they could not be classified under item 715.15, but were classifiable under item 688.45, TSUS, as "electrical articles, not specially provided for" (electrical articles, nspf). *United States v. Texas Instruments, Inc.*, 69 CCPA 136, 673 F.2d 1375 (1982).

In this action, plaintiff's solid state electronic *clocks* from Taiwan were classified and duties assessed under item 715.15, 716.15, and 720.34, Tariff Schedules of the United States (TSUS). Defendant admits that the classification is erroneous under *Texas Instruments.* Defendant says the merchandise is properly classified under item 688.36, TSUS, at a rate of 5.5% ad valorem, the rate under item 688.40, TSUS, in 1979. Effective March 30, 1980, item 688.40 was superseded by item 688.45 and 688.44 (covering electrical articles using pre-programmed digital integrated circuits to produce sounds). Executive Order 12,-204, 45 Fed.Reg. 20740 (1980). In 1982, item 684.45 was retroactively replaced for all unliquidated entries by item 688.36 (covering "Solid-state electronic watches and clocks and solid-state electronic watch or clock modules") and 688.43 ("other") by Executive Order 12,371. 47 Fed.Reg. 30449 (1982).

Plaintiff challenges the validity of Executive Order 12,371 as applied to its merchandise and asserts that its merchandise should be reliquidated under item A688.40, TSUS, duty-free under the GSP, since merchandise from Taiwan entering under item 688.40, TSUS, in 1979 was entitled to GSP treatment. The "A" prefix denotes duty-free treatment under the GSP.

Plaintiff moves, and defendant cross-moves, for summary judgment. The parties agree there are no genuine issues of material fact precluding summary judgment.

The questions presented are (1) whether Executive Order 12,371 covers plaintiff's merchandise, and (2) whether the President retroactively changed the rate of duty for plaintiff's merchandise (3) without observing procedural requirements for withdrawing GSP status. The Court holds that Executive Order 12,371 validly applies to plaintiff's merchandise, and that the merchandise is properly classified under item 688.36, TSUS, at a rate of 5.5% ad valorem.

Following the *Texas Instruments* decision the President on July 12, 1982 issued Executive Order 12,371 to "clarify that cer-

tain import sensitive articles are, and since the enactment of the Trade Act of 1974 have been, precluded from eligibility for duty-free treatment pursuant to section 503(c)(i) [sic] of the Trade Act [19 U.S.C. § 2463(c)(1) ]." 47 Fed.Reg. 30449.

The validity of Executive Order 12,371 was upheld in *North American Foreign Trading Corp. v. United States*, 600 F.Supp. 226, 8 CIT 359, (1984), *reh'g den.*, 607 F.Supp. 1471, 9 CIT —— (1985), *aff'd*, 783 F.2d 1031 (Fed.Cir.1986) (*North American I*), an action involving solid state electronic digital watches imported from Hong Kong. The Court of International Trade [CIT], held that Congress prohibited granting GSP status to watches, citing section 503(c)(1)(B) of the Trade Act of 1974, 19 U.S.C. § 2463(c)(1)(B) (1982). Affirming, the Court of Appeals for the Federal Circuit held that "the watches were not eligible for the benefits of the [GSP] at the time of their importation, in accordance with 19 U.S.C. sec. 2463(c)(1)(B) and (C)." Slip Op. at 2. Section 2463(c) provides as follows:

**(c) Articles which may not be designated as eligible articles**

(1) The President may not designate any article as an eligible article under subsection (a) of this section if such article is within one of the following categories of import-sensitive articles—

(A) textile and apparel articles which are subject to textile agreements,

(B) watches,

(C) import-sensitive electronic articles,

(D) import-sensitive steel articles,

(E) footwear articles specified in item 700.05 through 700.27, 700.29 through 700.53, 700.55.23 through 700.55.75, and 700.60 through 700.80 of the Tariff Schedules of the United States.

(F) import-sensitive semimanufactured and manufactured glass products, and

(G) any other articles which the President determines to be import-sensitive in the context of the Generalized System of Preferences.

Since plaintiff's watches were excluded from GSP status in *North American I*, the watches did not obtain such status when their tariff classification was changed and since the President did not withdraw duty-free treatment from plaintiff's merchandise, the President was not required to follow the statutorily mandated procedure in withdrawing such status established by section 504(a) of the Trade Act of 1974, 19 U.S.C. § 2464(a) (1982).

Plaintiff first argues that Executive Order 12,371 does not, by its terms, encompass merchandise entered before 1980. Plaintiff notes that (1) Annex II to Executive Order 12,371, establishing staged reductions in rates of duties for affected items, amends Annex III to Presidential Proclamation 4707 which was effective January 1, 1980, and (2) the table in Annex II displaying rates of duty under Executive Order 12,371 does not include a rate of duty for articles entered before January 1, 1980. Plaintiff argues that if the President meant to refer to merchandise entered prior to 1980, he had to refer to such merchandise in Annex II.

The Court disagrees. Executive Order 12,371 by its terms affects "all articles previously entered for which liquidation has not been made final" as of the day following the date of the order, July 13, 1982. Since plaintiff's action challenging the denial of its protest was pending before the Court at that time, liquidation of its entries had not yet become final, and its merchandise is within the scope of the Executive Order. Annex II does not limit the scope of Executive Order 12,371, but rather establishes staged reductions in rates of duties for the newly created tariff items.

Plaintiff further argues that Executive Order 12,371 does not affect the GSP status of merchandise within item 688.40, under which plaintiff seeks classification, on the ground that the order does not specifically mention the GSP status of merchandise classifiable under that item. Section 3 of Executive Order 12,371, provides:

> Annex III of Executive Order No. 11888 of November 24, 1975, as amended, listing articles that are eligible for benefits of the GSP when imported from all designated beneficiary developing countries except those specified in General Headnote 3(c)(iii) of the TSUS, is amended by deleting TSUS item 688.45 therefrom and inserting in lieu thereof TSUS item 688.-43.

In 1982, item 688.40, TSUS, was not on the relevant GSP list, Annex III of Executive Order No. 11,888, as amended, having been replaced by items 688.44 and 688.45 in 1980. Since the President stated that Executive Order 12,371 affects all articles for which liquidation had not been made final, the reference in Executive Order 12,371 to item 688.45 is properly read to cover the predecessor provision.

Second, plaintiff argues that if the President did retroactively withdraw GSP status from articles classifiable under item 688.40, TSUS, the President has no authority to retroactively deny duty-free treatment. But, as the Circuit Court of Appeals for the Federal Circuit stated in *North American I*:

> This is not a case of retroactive imposition of duty, because the goods in question had not been finally liquidated. Executive Order 12371 by its terms applied only to [merchandise] that had not been liquidated prior to the Order. 47 Fed. Reg. 30449, 30450 (1982). No vested right to a particular classification or rate of duty or preference is acquired at the time of importation. *Norwegian Nitrogen Products Co. v. United States*, 288 U.S. 294, 318 [53 S.Ct. 350, 358, 77 L.Ed. 796] (1932); *United States v. Yoshida International, Inc.* [63 CCPA 15], 526 F.2d 560, 580 (1975).

Slip Op. at 1–2. Plaintiff cannot complain if its protest extended the finality of the liquidation to allow the President to correct an unanticipated effect of a change in the classification of its merchandise.

Finally, plaintiff argues that since the President did not follow the statutorily mandated procedure for withdrawing GSP status, set forth in 19 U.S.C. § 2461, any withdrawal of GSP treatment for articles

classifiable under item 688.40, TSUS, is *ultra vires* and void. Again, the Court disagrees.

The Court finds no indication that Congress intended to include the clocks in this case in the reference to "watches" in section 2463(c)(1)(B). But the Court holds that the President could find that the clocks were prohibited by Congress from designation for GSP treatment as "import sensitive electronic articles" under section 2463(c)(1)(C) or "other articles which the President determines to be import-sensitive in the context of the Generalized System of Preferences" under section 2463(c)(1)(G).

Nothing in the statute or legislative history defines the term "import-sensitive" in subsections 2463(c)(1)(C), (D), (F), or (G). Nor is there any provision providing for procedures to be followed in determining whether merchandise is "import-sensitive" within those subsections. Since subsection 2463(c)(1)(G) clearly states that the President may determine that articles are "import-sensitive", the Court concludes that Congress gave the President discretion to determine whether merchandise is "import-sensitive" under the statute and therefore prohibited from designation for GSP treatment.

Plaintiff concedes that "Congress has given the President the power to exercise his judgment in designating articles as eligible for GSP benefits ... in determining whether the designated article is import-sensitive," but argues that "the question of 'import-sensitivity' is to be determined in accordance with the statutory provisions governing GSP designation of articles." Plaintiff's Second Supplemental Brief at 2–3. While the statute clearly establishes procedures the President is to follow for designating articles as eligible for GSP treatment, section 2463(a), there is no similar provision with respect to those articles which may not be designated as eligible. The Court will not infer such a provision.

The Court holds that Congress granted the President authority to issue Executive Order 12,371, and that the Executive Order served as the President described, "to clarify" that the merchandise had been considered "import-sensitive" since the enactment of the Trade Act of 1974 and therefore was ineligible for duty-free treatment under the GSP. Since the merchandise was ineligible for GSP treatment, the President did not withdraw GSP status from the clocks and was not required to observe the procedural requirements for withdrawing GSP status.

Plaintiff's motion for summary judgment is denied; defendant's motion for summary judgment is granted. Judgment will be entered accordingly. So ordered.