**TEXAS INSTRUMENTS
INCORPORATED,
Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 80–10–01666.**

United States Court of International Trade.

April 17, 1981.

Frederick L. Ikenson, Washington, D. C., on the brief and at the oral argument, for plaintiff.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, Commercial Litigation Branch, New York City (Jerry P. Wiskin, New York City, on the brief and at the oral argument), for defendant.

BOE, Judge:

The merchandise which is the subject of the above-entitled cause of action consists of solid state electronic watch modules and solid state electronic watches entered at Lubbock, Texas in June 1980. Upon liquidation the Director of Customs at Dallas-Fort Worth, Texas classified the solid state electronic watch modules under item 716.18, TSUS (1980), providing:

Schedule 7, Part 2, Subpart E

Watch movements, assembled, without dials or hands, or with dials or hands whether or not assembled thereon:

\* \* \* \* \* \* \*

Having no jewels or not over 17 jewels:
Not adjusted, not self-winding (or if a self-winding device cannot be incorporated therein), and not constructed or designed to operate for a period in excess of 47 hours without rewinding:
Having no jewels or only 1 jewel:

\* \* \* \* \* \* \*

716.18    Over 0.6 but not over 1.77 inches in width . . . . . . . . 67¢ each.

The solid state electronic watches were classified under item 715.05, TSUS, providing:

715.05   Watches . . . . . . . . . The column 1 rates applicable to the cases, plus the column 1 rates applicable to the movements, if such cases and movements were imported separately.

The plaintiff, protesting the liquidated classifications, claims the imported merchandise, the solid state modules as well as the solid state watches, are properly classifiable under item 688.45, TSUS (1980) (2nd supp. 3/28/80), providing:

Schedule 6, Part 5

Electrical articles and electrical parts of articles, not specially provided for:
Electrical articles using pre-programmed digital integrated circuits to produce sound . . . . . . . . . . . . . . . .

688.45   Other . . . . . . . . . . . . . . . . 5.3% ad val.

The solid state modules which are a part of the imported entries consist of a substrate on which are affixed an integrated circuit chip, a capacitor, a quartz crystal and a digital display, more specifically referred to as a liquid crystal display (LCD).

Included as a part of the module are certain additional stationary parts such as a clip to contain batteries and electrical connections between the substrate and the digital display.

The solid state electronic watches, comprising the remaining balance of the imported entries, consist of plastic cases into which the solid state electronic modules, aforedescribed, are fitted and retained.

The plaintiff in seeking a determination herein by its motion for summary judgment relies principally upon the prior decisions of this court and the affirming decisions of our appellate court in the cases of *United States v. Texas Instruments, Inc.*, 620 F.2d 269 (Cust. & Pat.App.1980), *aff'g.* 82 Cust.Ct. 272, 475 F.Supp. 1183 (1979) and *United States v. Texas Instruments, Inc.*, 620 F.2d 272 (1980), *aff'g.* 82 Cust.Ct. 287, 475 F.Supp. 1193 (1979).

The defendant in its opposition to plaintiff's motion for summary judgment contends that the foregoing decisions are not controlling in the instant action and that genuine triable issues of fact exist herein, thereby precluding the entry of summary judgment.

It is undisputed that the imported merchandise in the instant action is not the same as the imported merchandise which was the subject matter in the prior *Texas Instruments* decisions, aforecited. In the first *Texas Instruments* case cited *supra*, the imported merchandise consisted of an encapsulated integrated circuit without a digital display affixed thereto and without a capacitor or a quartz crystal affixed to the module in the space which had been provided therefor. Notwithstanding the difference with respect to the specific identity of the merchandise in issue existing in the instant case and the prior *Texas Instruments* decisions, the court is of the opinion that the inclusion of the components (capacitor, quartz crystal and digital display) as a part of the imported solid state electronic module in no manner serves to remove the same from the rationale of the prior determinations of this court and our appellate court.

In the prior *Texas Instruments* decision 620 F.2d 269, *supra*, affirming the decision of the trial court our appellate court determined that an integrated circuit, a component of a solid state electronic module, was not classifiable under item 720.75, TSUS (1976), as "other assemblies and subassemblies" for "watch movements." The appellate court found that in accordance with the common and commercial meaning of the term "movement" at the time the Tariff Schedules of the United States were adopted, a "watch movement" as used in the Tariff Schedules of the United States requires a mechanism possessing moving parts to which or from which motion is transferred. The court further found that neither the Tariff Classification Study nor the Congressional Record indicate that solid state electronic modules, having no moving parts, was intended by the Congress to be included within the tariff schedule provisions for "watch movements." The lexicographic and dictionary definitions as well as the testimony adduced, all with respect to the common and commercial meaning of the term "movement" at the time of the enactment of the Tariff Schedules of the United States, satisfied both the trial court as well as the appellate court that "mechanism," "works" or "body of parts" to which or from which motion is transferred is a requisite identifying characteristic of a "watch movement."

The government in an effort to bring itself within the foregoing definition of a "watch movement" again urges that an acknowledged vibration existing within the quartz crystal, a component of the solid state module, constitutes a motion sufficient to satisfy the intended requirement. The trial court as well as the appellate court, without reservation, rejected this contention by the government when urged in the prior *Texas Instruments* cases, *supra*. In referring to the quantum or magnitude of the alleged motion within the quartz crystal as roughly one angstrom or one ten-billionth of a meter, our appellate court formerly characterized such motion as "essentially molecular vibration" neither transmitting nor transferring mechanical energy or motion to or from any other part.

■ Suffice it to say, this court is satisfied that the solid state electronic module, as imported, does not bear an essential resemblance to a "watch movement" as contemplated by the Tariff Schedules of the United States. *Davies Turner & Co. v. United States*, 45 CCPA 39, C.A.D. 669 (1957).

As our appellate court has stated in *United States v. Texas Instruments, Inc.*, 620 F.2d 269, *supra*:

> The criteria established by the TSUS for classification as a watch movement are: (1) A timepiece movement, (2) less than 1.77 inches wide and 0.5 inch thick. Though the dimensional requirements are met by the imported article, it does not bear an essential resemblance to a timepiece movement because the imported article is not and does not contain a movement.

The remaining balance of the imported merchandise consists of solid state electronic watches in which the solid state electronic modules, as hereinbefore described, are fitted and encased. In contending that these watches are properly classified under item 715.05, TSUS (1980), the government fails to recognize the underlying criteria requisite to the classification of an imported article as a watch under subpart E, part 2 of schedule 7. Headnotes to subpart E provide in part:

*Subpart E headnotes* :

> 1. This subpart covers watches and clocks, time switches and other timing apparatus with clock or watch movements, and parts of these articles. * * *.
>
> 2. For the purposes of this subpart—
>
> (a) the term *"watches"* embraces timepieces (including timepieces having special features, such as chronographs, calendar watches, stopwatches, and watches designed for use in skindiving) suitable for wearing or carrying on or about the person, whether or not the movement therein is within the definition of "watch movement" in headnote 2(b), below;

(b) the term *"watch movement"* means a timepiece movement measuring less than 1.77 inches in width and less than 0.50 inch in thickness; * * *.

3. (a) The complete citation for watches covered by item 715.05 and clocks covered by items 715.15 and 715.16 shall be each of such item numbers, *followed by the appropriate item numbers for the respective movements and cases comprising such watches or clocks.* [Emphasis supplied.]

■ From the foregoing it appears implicit that subpart E, in which item 715.05 is included, embraces only watches possessing "watch movements." From the aforequoted headnote 2(a) the term "watches" embraces timepieces—whether the *movements* therein may or may not fall within the dimensional requirements provided for in the subsequent headnote 2(b). Thus, pursuant to headnote 3(a) the classification of a watch under item 715.05 includes the tariff rate applicable to the *case* of the watch plus the rate applicable to the *movement* contained therein in the same manner as if the case and the movement were imported separately. Inasmuch as no enlightenment is provided by the tariff schedules as to what constitutes a movement, except as to its size and association with a "timepiece," it has been necessary for the courts to determine the common meaning and understanding of that term in the horological industry. As this court has previously indicated herein, the solid state electronic module, having no mechanism possessing moving parts from which or to which motion is transferred, was not within the common meaning and understanding of the term "watch movements" at the time of the enactment of the Tariff Schedules of the United States. Accordingly, if the basic elements of logic are to remain inviolate, it can only follow that imported solid state electronic watches, in which the solid state electronic modules are encased and are parts thereof, likewise cannot be classified under subpart E, part 2 of

schedule 7, TSUS, and specifically item 715.05 thereof.

Accompanying its response in opposition to plaintiff's motion for summary judgment, the defendant has filed a cross-motion for leave to amend its answer asserting as an alternative claim that the merchandise in question be classified under item 740.38. This alleged alternative classification is fully set forth in defendant's cross-motion and an argument in support thereof is contained as a part of defendant's memorandum in opposition to plaintiff's motion for summary judgment. Although plaintiff in its reply memorandum objects to the granting of defendant's cross-motion, full consideration thereof and an argument with respect thereto is contained at length in plaintiff's reply memorandum. It appears clear, therefore, that the plaintiff has been fully apprised with respect to the alternative claim concerning which the defendant seeks further adjudication. The very purpose of an amended answer has thus been satisfied.

Rule 15(b) of this court provides:

(b) Amendments to Conform to the Evidence.

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

Accordingly, in the interest of securing an immediate adjudication of all claimed classifications herein without incurring unnecessary procedural time-consuming delays, thereby obviating renewed and repeated litigation, this court accepts defendant's cross-motion as an amended answer for the purpose of considering its alternative classification.[1]

Item 740.38 upon which defendant thus predicates its alternative claim provides:

Schedule 7, Part 6

Subpart A.—Jewelry and Related Articles
Jewelry and other objects of personal adornment not provided for in the foregoing

---

1. Plaintiff acknowledged at the oral argument he would not be prejudiced by the granting of defendant's cross-motion.

provisions of this part (except articles excluded by headnote 3 of this part), and parts thereof:

\* \* \* \* \* \* \*

Valued over 20 cents per dozen pieces or parts:

Watch bracelets:

\* \* \* \* \* \* \*

740.38   Other ......................... ..25.4% ad val.

The defendant contends that inasmuch as headnote 1(ii) to subpart A, part 6, schedule 7, TSUS, excludes from classification thereunder watches classified under subpart E, part 2, schedule 7, the non-applicability of the foregoing exclusionary headnote would result in the classification of watches as "jewelry and other objects of personal adornment." In support of its contention the defendant relies on headnote 2 to subpart A, part 6, schedule 7, TSUS, providing in part:

> 2. For the purposes of this subpart—
> (a) the term *"jewelry and other objects of personal adornment"* (items 740.05 through 740.38), includes rings, ear-rings and clips, bracelets (including watch bracelets and identification bracelets), necklaces, neck chains, watch chains, key chains, brooches, tie pins and clips, collar pins and clips, cuff links, dress-studs, buttons, buckles and slides, medals, military, fraternal and similar emblems and insignia (including those prescribed for military, police, or other uniforms), fobs, pendants, hair ornaments (including barrettes, hairslides, tiaras, and dress combs), and similar objects of personal adornment, * * *.

This court is unable to share in defendant's reasoning and in particular its questionable conclusion, presumably derived from the afore-quoted headnote 2. An examination of the articles specified in headnote 2 to be included as "jewelry and other objects of personal adornment" fails to indicate to this court that the imported merchandise can be said to be "within the named exemplars" as urged by the defendant. "Watch bracelets" and "watch chains" are neither "watches" nor "movements" as defined by the tariff schedules. The classification of a "watch bracelet" or a "watch chain" as an object of adornment under headnote 2, indeed, cannot be deemed to include the watch or the movement thereof in such a classification to any greater extent than it can be said that a "key chain" specified as an "exemplar" under headnote 2, can serve to cause the key, to which the chain may be attached, to be likewise classified thereunder.

Although "watch bracelets" have been specifically designated as "exemplars" of the term "jewelry and other objects of personal adornment" under headnote 2 aforequoted, it is of interest to note that, as evidenced by official entry papers, the watch bands attached to the imported solid state watches in issue have not been considered "jewelry or other objects of personal adornment" but have been classified and liquidated by the Customs Service under item 774.55, TSUS, as "articles not specially provided for, of rubber or plastics: ... Other." Absent the classification of the black plastic bracelet as "jewelry" or an "object of personal adornment" it, indeed, would be a distortion of reasoning and difficult to justify the classification of the black plastic solid state watches, to which the plastic bracelet is attached, as an "object of adornment." From an examination of representative samples of the merchandise in question (Exhibit 6, Attachment A), the court can only conclude that the imported solid state watches are functional and serve a utilitarian purpose when worn on the person and cannot be classified, as urged by the defendant, as "jewelry and other objects of personal adornment." The exhibit itself may be said to be a most potent witness.[2] *Marshall Field & Co. v. United States*, 45 CCPA 72, C.A.D. 676 (1958).

In view of the assertions of the defendant that genuine issues of material fact exist and that a trial determining such issues is accordingly required, the remaining question to be determined herein is whether from the record submitted summary judg-

---

2. The burden of proof rests upon the defendant to establish the classification urged in its alternative claim. The defendant has not met this burden. *See United States v. R. J. Saunders & Co.*, 42 CCPA 128, C.A.D. 584 (1955).

ment may be granted. Were the classification of the merchandise in issue to be predicated upon the common understanding and meaning of the term "watch movement" as the term may have been used since the introduction of the solid state modules and watches commercially in the United States subsequent to 1972, it might be argued that the affidavits submitted by the defendant substantiate defendant's contention. However, the defendant fails to recognize that it is the common as well as the commercial understanding of the meaning of the term "watch movements" at the time that the Tariff Schedules of the United States were enacted which evidences the congressional intent as to the meaning of that term in the tariff schedules. No showing has been made nor attempted to be made by the defendant that this court or our appellate court have erred in the construction of the meaning of the term "watch movement," as hereinbefore defined, and more particularly enunciated in the prior decisions of these courts in the cases of *United States v. Texas Instruments, Inc., supra.*

As this court has stated in previous decisions, to attempt to distort the tariff schedules in order to provide a "resting place" for articles which by tariff definition as well as by the determined congressional intent cannot be properly so accommodated will only serve to wreak untold confusion on the application of these schedules upon which the integrity of our foreign commerce depends. The courts cannot be asked to restructure the tariff schedules by judicial fiat in order to accommodate scientific and engineering innovations which far transcend the vision and intent of the Congress at the time of the enactment of the tariff schedules. It is true, as defendant urges, that it is an established principle of Customs law that tariff schedules, are written for the future as well as for present application and may embrace merchandise unknown at the time of their enactment. It

must be borne in mind, however, that as a corollary thereto it is likewise well-established that in applying a tariff provision to an article, unknown at the time of the enactment thereof, such an article must possess an essential resemblance to the characteristics so described by the applicable tariff provision. As our appellate court has clearly stated in the case of *Smillie & Co. v. United States,* 12 Cust.Ct.Appls. 365, 367, T.D. 40520 (1924):

> As to all such articles the statute will be held to apply if the articles possess an essential resemblance to the ones named in the statute *in those particulars which the statute established as the criteria of the classification.* [Emphasis supplied.]

In the opinion of this court the merchandise in question does not bear a resemblance to a "watch movement" as provided by item 716.18 [3] nor to a "watch" as provided by item 715.05 and, accordingly, is not properly classifiable thereunder. It is the further opinion of the court that the merchandise in question is more specifically described under item 688.45, TSUS, as electrical articles and electrical parts of articles, not specially provided for, other.

In the tariff schedules of 1978 and 1980 there is evidenced an increased recognition of electrical articles based on integrated circuits and their capabilities to perform various functions previously performed only by mechanical processes. Thus, in these recent schedules specific and expanded reference is made to a variety of integrated circuits, signifying an awareness of the diverse uses to which these articles are rapidly being adapted. In the same manner as the preceding item, 688.44, specifically relates to electrical articles using digital integrated circuits to produce sound, so under the claimed classification, item 688.45, "electrical articles . . ., other," the merchandise in question consists of articles using digital integrated circuits to produce time.

---

**3.** The court notes with interest the classification under which the subject solid state module has been liquidated. Indeed, the solid state module cannot be said to be included within the descriptive heading requiring the article to be "not constructed or designed to operate for a period in excess of 47 hours without rewinding." *See* Descriptive heading to items 716.10 through 716.44, inclusive.

It appearing, therefore, that no genuine issue of material fact exists herein and that the merchandise in issue consisting of solid state electronic modules and solid state electronic watches cannot be properly classified as "watch movements" and "watches" respectively, as liquidated, nor under the claimed alternative classification urged by the defendant and it further appearing that the merchandise in question properly should be classified under item 688.45, TSUS, as claimed by the plaintiff, the motion of the plaintiff for summary judgment is, accordingly, granted.

Let judgment be entered accordingly.